UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM PALUDA and ROBERT HALL,

        Plaintiffs,

v.

        Case number 07-10849
        Honorable Julian Abele Cook, Jr.

THYSSENKRUPP BUDD COMPANY,
a Michigan Corporation,

        Defendant.

_____/

ORDER

On February 26, 2007, the Defendant, Thyssenkrupp Budd Company ("Company"), removed this case from a state court (to wit, the Wayne County Circuit Court of Michigan) to this federal court. However, the Plaintiffs, William Paluda and Robert Hall, believing that this case had been improvidently removed from the state court, filed a motion to remand on March 23rd. Their motion is now before the Court for its evaluation and resolution.[1]

I.

Paluda and Hall began their employment with the Company at its plant in Detroit, Michigan

---

[1] In this case, the Plaintiffs contend that the Company subjected each of them to unlawful acts of discrimination on the basis of their ages. These charge have been denied by the Company. However, the primary focus of the parties' arguments in connection with the now-pending motion revolves around the propriety, if any, of the Company's removal of this action to the federal court.

on October 23, 1985 and October 28, 1986, respectively.[2] On May 15, 2006, the Company announced its decision to cease its operations at this facility. Several months later (October 31st), the Company consummated an agreement, commonly known among the parties as their "Plant Closing Agreement," with the UAW and its Local No. 306 [3] which dealt with those issues relating to the closing of the Detroit plant.[4] On November 8, 2006, the Company, citing the closing of this work facility, advised the Plaintiffs and other employees that their tenure of employment would be terminated as of December 4, 2006.[5]

Ultimately, the "Plant Closing Agreement" divided those employees who were entitled to separation payments into three groups; namely, A,[6] B, and C[7]. The Group B employees, in particular, are identified as those individuals who were (1) actively working for the Company on or after May 15, 2006 but were not eligible to retire prior to January 1, 2007, (2) over forty years

---

[2]Throughout the duration of their employment with the Company, the two Plaintiffs were represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").

[3]Although the collective bargaining agreement (including a pension plan) between the Company and the UAW expired in October 2005, its provisions were extended through January 5, 2006 by mutual agreement. However and despite the subsequent expiration of the terms and conditions of the collective bargaining agreement, the parties utilized its provisions without any written agreement until the "Plant Closing Agreement" was officially formalized.

[4]Inasmuch as these negotiations involved fairly complicated pension and labor law issues, the parties enlisted the aid and assistance of mediators from the Federal Mediation and Conciliation Service and the Michigan Employment Relations Commission. The discussions between the parties involved such matters as age as a means of determining the applicability of separation plans. In essence, the "Plant Closing Agreement" established eligibility criteria and benefit levels as a result of the plant closing.

[5]The Plaintiffs were advised of the available separation plans upon the closing of the Company's work facility.

[6] The Plaintiffs did not qualify for Group A; hence, this grouping will not be discussed here.

[7] Each classification offered health and dental care benefits to the employees subsequent to the closing of the plant through January 2007.

of age on the date of their layoff or termination from the Company, and (3) credited with at least ten years of service on the date of the layoff or termination. This Group B also included those workers who could demonstrate that they had accumulated a total figure of fifty five or more when coupled with their age and years of service as a Company employee as of the date of the layoff or termination. The "Plant Closing Agreement" also contained a provision which stated, in essence, that those workers who had been laid off or terminated were entitled to a one time payment of $75,000 within a period of forty-five days of the date on which the Detroit plant ceased to operate. However, the parties also agreed that if an employee resigned prior to the closing date, he would be entitled to receive a one time payment of $50,000.

Group C employees are identified as those individuals who (1) were actively working with the Company on or after May 15, 2006 and (2) failed to satisfy the eligibility requirements of Groups A or B. The employees in this category were also eligible to receive hospital, medical, surgical, and drug insurance benefits for a period of eighteen months as well as dental coverage until January 31, 2007. In addition, some of the employees, including the Plaintiffs, were entitled to receive 200% of their annual wages as a form of a separation payment that would otherwise be payable pursuant to a supplemental unemployment benefit plan because of their twenty plus years of work experience.

On the date when the Company closed its Detroit facility, both of the Plaintiffs (1) were thirty-nine years old, (2) had acquired ten years of credited service, (3) had accumulated an aggravate figure of more than fifty five when the sum of their respective ages and years of service in the plant are considered, and (4) were actively working for the Company subsequent to May 15, 2006. Notwithstanding, the Company declined to grant Group B status to either of the Plaintiffs. As a direct result of this administrative decision by the Company, the Plaintiffs were effectively

precluded from having an opportunity to receive a one time payment that would otherwise be available to them under the Group B status. Believing themselves to be aggrieved by these administrative decisions, the Plaintiffs filed a grievance according to the terms of the parties' collective bargaining agreement on December 1, 2006, claiming that they had been wrongly denied benefits by the Company because of their age. However, the Union rejected their joint requests to file grievances against the Company that would challenge the Company's administrative decisions.

II.

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq,* preempts state law claims to the extent that they "relate to any employee benefit plans." 29 U.S.C. § 1144(a). The terms, "employee benefit plan," or "plan," refer to an employee welfare benefit plan, an employee pension benefit plan, or a plan which is an employee welfare benefit plan and an employee pension benefit plan. 29 U.S.C. 1002(3). Generally, those plans which pay employee severance benefits are considered to be employee welfare benefit plans. 29 C.F.R. § 2510.3-1(a)(3); *Massachusetts v. Morash,* 490 U.S. 107, 116 (1989). However, not all severance benefit plans are governed by ERISA. *Cassidy v. Akzo Nobel Salt,* 308 F.3d 613, 616 (6th Cir. 2002) (quoting *Swinney v. General Motors Corp.,* 46 F.3d 512, 517 (6th Cir. 1995)). Although a one time severance benefit plan is not necessarily considered to fall under the ERISA umbrella, there are circumstances in which an employer makes a commitment to pay certain benefits and, thereafter, undertakes "a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9 (1987). Thus, in order to determine whether a severance agreement is an ERISA severance benefit plan, a court must

consider whether the employer has any discretion over the distribution of benefits, and if there are continuous demands on the employer's assets. *Kolkowski v. Goodrich Corp.,* 448 F.3d 843, 848 (6th Cir. 2006) (citing *Cassidy,* 308 F.3d at 616).

In this case, the Plaintiffs proclaim that this case should be remanded to the state court because the Court is without jurisdiction over the subject matter to resolve their claims against the Company. In support of this position, they argue that the severance payments cannot be preempted by ERISA inasmuch as they do not qualify as welfare benefits.

It is generally accepted that employees within the Group B category who satisfy all of the requisite criteria are eligible to receive a one-time lump sum payment of $75,000. The Plaintiffs maintain that these benefit options are the products of a one-time event; i.e., the closing of the plant in Detroit. Moreover, they submit that the group classification of those employees who are entitled to severance payments neither require a massive administrative scheme nor a major undertaking since the Company was not obligated to exercise any discretion over the criteria. Rather, both of them assert that the "Plant Closing Agreement" only required the Company to undertake an arithmetical computation of the employee-applicant's age, years of service, and length of service.

The Company, in challenging these arguments by the Plaintiffs, contends that it has undertaken numerous responsibilities as an employer in an effort to ensure that the benefits are offered to various employees at different levels, all of which are based on a variety of criteria. It also submits that the "Plant Closing Agreement" contemplates ongoing health coverage, disability, and welfare benefits in addition to providing the terminated employee with a one-time lump sum payment. Furthermore, the Company maintains that it is obligated to exercise discretion under the terms of the "Plant Closing Agreement" whenever it (1) reviews each individual's eligibility in

order to identify the specific group classification to which the employee should be placed, and (2) makes a determination of the benefits, if any, that will be awarded.

The "Plant Closing Agreement" plan requires the Company to assess each individual employee in order to determine if he is eligible for a particular group classification and the amount of resulting benefits. In its evaluation of each employee, it is clear to this Court that the Company is required to exercise discretion when determining the eligibility of a worker. Additionally and aside from a one-time lump sum payment, employees were eligible for medical and dental benefits for a specific period of time following the closing of the Company's plant in Detroit. Clearly, such benefits had a major effect upon the overall welfare of the Company. Thus, the distribution of these benefits entails a variety of contractual obligations upon the Company which involves more than a mere mechanical application of data, as suggested by the Plaintiffs. Therefore, the Court concludes that the severance benefit payments are preempted by ERISA , in that they qualify as employee welfare benefits plans.

### III.

Generally, claims arising from an interpretation of a collective bargaining agreement are preempted by federal law. *Lingle v. Norge Div. Of Magic Chef,* 486 U.S. 399, 406-7 (1988). In 1985, the Supreme Court declared that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . , or dismissed as pre-empted by federal labor-contract law." *Allis-Chambers Corp. v. Lueck,* 471 U.S. 202, 220 (1985).

The Plaintiffs argue that the elements of their state law age discrimination claims are independent of the collective bargaining agreement and, therefore, cannot be preempted by ERISA.

It is the position of the Plaintiffs that their reliance upon the various provisions of the "Plant Closing Agreement" does not require an interpretation of the collective bargaining agreement by the Court, inasmuch as they were denied benefits solely on the basis of their age. Moreover, the Plaintiffs contend that no reference to the collective bargaining agreement is necessary when seeking to determine if either or both of them have satisfied the criteria for the $75,000 severance payment as part of the Group B classification. Instead, it is their collective belief that the Court need only refer to the "Plant Closing Agreement" for guidance.

The Company takes a different view, contending that the Plaintiffs' claims are preempted by Section 301 of the LMRA, 29 U.S.C. § 185(a)[8]. It is the Company's position that the Plaintiffs' state law age discrimination claim is distinctly tied to a judicial review of the collective bargaining agreement because the benefits which they seek to obtain in this lawsuit are a part of a bona fide retirement policy plan, or at the very least, a modification of the existing "Mutual Consent Early Retirement Benefit Plan." Hence, the Company claims that the success of the Plaintiffs in this litigation is largely dependent, in part, on whether there is a sufficiency of proffered evidence that they are similarly situated to their fellow-employees who are eligible to receive Group B benefits. According to the Company, this standard of review also obligates the Plaintiffs to demonstrate that they and Group B employees, with whom the comparison is made, are entitled to receive benefits under the "Mutual Consent Early Retirement Benefit Plan[9] pursuant to the terms of the collective

---

[8]29 U.S.C. § 185(a) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[9]The expired collective bargaining agreement, including the pension plan, provided for special plant closing benefits if the work facility closed during its term. The "Mutual Consent Early

bargaining agreement. The Company submits that it is the "Mutual Consent Early Retirement Plan" which distinguishes the Group B employees from their counterparts in Group C. Given that the Group B employees had retained a right to the "Mutual Consent Early Retirement Benefit Plan" before the collective bargaining agreement was finalized, they were offered $50,000 to surrender or waive any entitlement to this benefit. By contrast, the Plaintiffs were not eligible for the "Mutual Consent Early Retirement Benefit Plan" and, therefore, they were not offered any consideration in its exchange.

These age discrimination claims by the Plaintiffs necessitate a review of the "Plant Closing Agreement" and the collective bargaining agreement because the benefits which have been claimed by them were based upon a bona fide retirement policy. The determination of eligibility for group classifications partly rests upon whether an individual employee has a right to the "Mutual Consent Early Retirement Benefit Plan," as authorized by the collective bargaining agreement. Thus, a review and analysis of the terms of the collective bargaining agreement is necessary in order to determine if the Plaintiffs were subjected to unlawful acts of discrimination on the basis of their age. Although it facially appears that the Plaintiffs were denied benefits on the basis of their ages, it appears - without more - that the denial by the Company was based upon a variety of factors all of which were attributed to the Plaintiffs' alleged failure to satisfy a Group B classification, including their inability to acquire a right to the "Mutual Consent Early Retirement Benefit Plan." Accordingly, the Plaintiffs' state law age discrimination claims require a review of the terms of the collective bargaining agreement and is preempted by § 301 of the LMRA.

IV.

---

Retirement Benefit Plan" included supplemental pension benefits and special health care benefits for qualified employees.

For the reasons that have been stated above, the Court concludes that the Plaintiffs' state law age discrimination claims are preempted by ERISA, 29 U.S.C. § 1144(a) and § 301 of the LMRA, and (2) this Court does have jurisdiction over the subject matter in this legal proceeding. On the basis of this conclusion, the Plaintiffs' motion to remand must be, and is, denied.

IT IS SO ORDERED.

Dated:   June 28, 2007                                                  s/ Julian Abele Cook, Jr.
         Detroit, Michigan                                              JULIAN ABELE COOK, JR.
                                                                        United States District Court Judge

Certificate of Service

I hereby certify that on June 28, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                                        s/ Kay Alford
                                                                        Courtroom Deputy Clerk